**DMI, INC., Appellant/Cross-Appellee,**

v.

**DEERE & COMPANY,
Appellee/Cross-Appellant.**

**Appeal Nos. 86–775, 86–797.**

United States Court of Appeals,
Federal Circuit.

Sept. 30, 1986.

James J. Hall, Emrich & Dithmar, Chicago, Ill., for appellant/cross-appellee.

John V. Patton, Bozeman, Neighbour, Patton & Noe, Moline, Ill., argued for appellee/cross-appellant. With him on the brief was Virgin Bozeman. Also on the brief were Robert H. Fraser, Fraser & Bogucki, Los Angeles, Cal., and R.L. Hollister and H. Vincent Harsha, Deere & Co., Moline, Ill.

Before MARKEY, Chief Judge, and DAVIS and BISSELL, Circuit Judges.

MARKEY, Chief Judge.

Appeal and cross-appeal from a judgment of the United States District Court for the Central District of Illinois. In Appeal No. 86–775, DMI, Inc. (DMI) appeals from a judgment entered on a jury verdict declaring invalid Claims 1, 6 and 8 of U.S. Patent No. 3,817,333, issued on June 18, 1974, to Jon E. Kinzenbaw ('333 patent). We affirm.

In Appeal No. 86–797, Deere & Company (Deere) contests a jury verdict of infringement. Because no judgment was entered on that verdict, that appeal is dismissed.

## BACKGROUND

### I. The Invention

The invention disclosed in the '333 patent is a multiple-unit plow system whose width is adjustable while the plow is moving.

The force required to pull a plow depends, in part, on the plow's width. A

plow's width depends on the spacing between its plow units, each of which cuts a separate furrow. In the plow disclosed in the '333 patent, the plow units rotate, enabling the spacing between them to be adjusted to accommodate different plowing conditions. A hydraulic cylinder actuates the adjustment, so that the tractor operator can change the plow's width while the plow is moving. DMI calls this "on-the-go" adjustability. The plow also contains other features that compensate for its changed configuration after width adjustment. The plow's tail section rotates with the plow units, so that the rear wheel always stays in the furrow cut by the plow unit directly ahead of it. The hydraulic cylinder that actuates the plow unit rotation also actuates the tail section rotation. In addition, the plow contains a steering linkage that maintains the plow's rear wheel parallel to the direction of travel. DMI calls this "compensated steering".

Claims 1 and 8 are the only independent claims of the '333 patent. Claim 1 reads:

In a plow system adapted to be pulled behind a traction vehicle and including a plurality of plow units each provided with a ground-working implement, and a main frame including a main horizontal beam inclined relative to the direction of travel of said plow system, and connected to said tractor for rotation about a vertical axis, the combination comprising: means for mounting said plow units to said inclined beam for rotation in a continuous manner about respective vertical axes; a real [sic] tail section mounted to the distal end of said inclined mean [sic] beam for rotation about a vertical axis and including a steering wheel; a guide beam pivotally mounted to each of said plow units and to said tail section and extending generally parallel to said inclined beam; hydraulic power actuated means controllable from the operator's position while said vehicle is in motion and connected between said guide beam and said frame for rotating said plow units together about their respective axes over a continuous range, such that the cut lines of all plow units remain parallel and define a predetermined angular relationship to said main beam to thereby provide an adjustable spacing between furrows formed by said plow units when pulled by said tractor; means for attaching said main frame to a traction vehicle for rotation about a vertical axis; and steering means connected between said vehicle and said steering wheel and responsive to the turning of said vehicle for turning said steering wheel in a direction opposite to the turning of said tractor, said steering means including compensating means for maintaining said steering wheel parallel to said plow units under normal operation for all settings of the spacing between said plow units, whereby the tail end of said plow system is caused to track the movement of said tractor during turning and said steering wheel is steered in the direction of travel of said vehicle to cause said tail section to align with the direction of travel of said vehicle for all lateral settings of said plow units.

Claim 6 reads:

The system of claim 1 further comprising power-actuated means carried by said tail section for lifting the distal end of said inclined beam and the forward end of said tail section relative to said steering wheel to adjust the height of said plows.

Claim 8 reads:

In a plow system adapted to be pulled behind a traction vehicle and including a plurality of plow units each provided with a ground-working implement, and a main frame including a main horizontal beam inclined relative to the direction of travel of said plow system, the combination comprising: hitch means for connecting said main beam to a traction vehicle for rotation about a vertical axis; means for mounting said plow units to said inclined beam for rotation about their respective vertical axes to adjust the lateral spacing of said units, the trailing plow unit including a rearwardly extending tail beam pivotally connected to the rear end of said inclined beam and a

trailing steering wheel mounted to said tail beam to follow behind the rear ground-working implement for supporting the rear end thereof; an elongated guide beam pivotally mounted to each of said plow units and extending generally parallel to said inclined beam; power actuated means controllable from the operator's position while said vehicle is in motion for forcing said guide beam longitudinally to adjust the angular disposition of said plow units in unison; and steering means connected between said vehicle and said steering wheel and responsive to the turning of said traction vehicle for steering said trailing steering wheel to follow behind said traction vehicle during turns and including compensation means for correcting the disposition of said trailing wheel for proper alignment with said rear ground-working implement to follow therebehind for all lateral adjustments of said units; said hitch means being the only support of the forward end of said plow system, and said axes of rotation of all of said units being located relative to the vertical axis of said hitch means whereby the leading plow unit will shift a given distance sideways relative to the rear furrow wheel of said vehicle when said power actuated means is adjusted and all other plow units will move a multiple of said given distance sideways from said rear furrow wheel of said vehicle.

## II. *Events Leading to this Litigation*

In 1971, DMI, the assignee of the '333 patent, began manufacturing the plow disclosed therein. White Farm Equipment Company subsequently began manufacturing a similar plow. DMI sued White for patent infringement. White agreed in 1976 to take a license from DMI, and the lawsuit was dropped.

In 1978, International Harvester began manufacturing an "on-the-go" adjustable width plow. DMI sued International Harvester for patent infringement in 1980. International Harvester took a license from DMI to manufacture a plow like the one disclosed in the '333 patent, but did not agree to include the allegedly infringing model. Instead, International Harvester filed with the Patent and Trademark Office (PTO) a Request for Reexamination of the '333 patent. After the PTO denied the request, International Harvester agreed to modify its license to include the allegedly infringing plow, and the lawsuit was dropped.

Deere began selling an "on-the-go" adjustable width plow in 1978, resulting in this litigation.

## III. *Procedural History*

On May 23, 1983, DMI sued Deere in the United States District Court for the Northern District of Iowa for infringing the '333 patent. On May 24, 1983, Deere filed a declaratory judgment action in the Central District of Illinois alleging patent invalidity, unenforceability, and non-infringement. On the parties' motion, the Iowa suit was transferred and the district court for the Central District of Illinois consolidated the suits.

The district court granted Deere's motion for summary judgment of non-infringement. DMI appealed to this court, which reversed and remanded. *DMI, Inc. v. Deere & Co.*, 755 F.2d 1570, 225 USPQ 236 (Fed.Cir.1985).

The district court conducted a five-day jury trial in October 1985. After instructing the jury, the court gave the jury a special verdict form (Fed.R.Civ.P. 49(a)) containing seven questions requiring yes or no answers. The jury answered: (1) the invention set forth in claims 1, 6, and 8 would have been obvious to a person of ordinary skill in the art at the time the invention was made; (2) two questions saying Deere's plow included a compensating means; (3) Deere infringed claims 1, 6, and 8 under the doctrine of equivalents; (4) Deere did not literally infringe claim 1; (5) the patent disclosed the best mode, and (6) contained an enabling disclosure.

On October 29, 1985, based on the jury's answer (1), the district court entered judgment in favor of Deere.

Both parties subsequently moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The district court denied all post-trial motions.

DMI moved for judgment of validity and literal infringement of claim 1 notwithstanding the jury's contrary verdicts. It now appeals from the judgment entered on the verdict, thus presenting for review the denial of its motion for JNOV and the denial of its motion for a new trial.

## ISSUES

(1) Whether the district court erred in denying DMI's motion for JNOV on validity.[1]

(2) Whether the district court abused its discretion in denying DMI's motion for a new trial.

## OPINION

### I. *Denial of DMI's Motion for JNOV on Validity*

#### A. *Standard of Review*

A trial judge presented with a motion for JNOV (1) must consider all the evidence in a light most favorable to the non-mover, (2) must not determine credibility of witnesses, and (3) must not substitute his or her choice for the jury's in finding facts, drawing inferences, or deciding between conflicting elements in the evidence. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983).

▮ To convince this court that the trial judge erred in denying the motion for JNOV, DMI must show that there was not substantial evidence to support the jury's factual findings. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). " 'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding

under review." *Perkin Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). If the jury's factual findings could on the evidence presented have been made by a reasonable jury, DMI may prevail only by showing that those findings cannot support the jury's legal conclusion. *Railroad Dynamics, Inc.*, 727 F.2d at 1512, 220 USPQ at 936.

#### B. *Factual Findings*

▮ As the trial judge instructed the jury in this case, certain factual inquiries must precede a legal conclusion on obviousness under 35 U.S.C. § 103. These areas of factual inquiry are (1) the scope and content of the prior art, (2) the differences between the claimed invention and the prior art, (3) the level of ordinary skill in the art, and (4) objective evidence of non-obviousness, such as commercial success, long-felt but unsolved needs, failure of others, copying, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966); *Perkin Elmer Corp.*, 732 F.2d at 894, 221 USPQ at 674. While the jury in this case did not answer interrogatories or supply special verdicts specifically addressing those factual areas, its answer (1) on obviousness must, in light of the instructions it received, be taken as establishing that the jury considered them. *Railroad Dynamics, Inc.*, 727 F.2d at 1513, 220 USPQ at 936. The law presumes the jury made the findings necessary to support its verdict, and the required findings are controlled by the court's instructions to the jury. *Perkin Elmer Corp.*, 732 F.2d at 893, 221 USPQ at 673.

#### 1. *Scope and Content of the Prior Art*

The trial judge instructed the jury that all prior art in the field of plows was pertinent prior art. Though DMI's briefs emphasize that the invention claimed in the '333 patent has special application to a

---

1. Because we uphold the denial of JNOV on validity, we do not reach DMI's appeal from

denial of JNOV on literal infringement of claim 1.

moldboard plow, DMI did not object to the judge's instruction and the claims are not limited to a moldboard plow.

Deere presented testimony about prior art references not cited in the '333 patent or in the request for reexamination: (a) The Smith patent (Australian No. 249,421, published February 28, 1963) discloses a plow capable of width adjustment, a travelling nut and screw accomplishing rotation of the plow units. The plow has two front and two rear wheels. One wheel of each pair runs in a pre-cut furrow, the other on uncut ground. The parties disputed whether the Smith plow is capable of width adjustment "on the go" and whether it includes a "compensated" steering means; (b) The Mincham patent (Australian No. 246,702, published January 26, 1961) discloses a fixed width plow. The plow has two front and one rear wheel. One front wheel and the rear wheel run in a pre-cut furrow, the other on uncut ground. The plow includes a means for steering the rear wheel; (c) The Wareing patent (Australian No. 257,301, published February 17, 1965) discloses a fixed width plow with a hydraulic cylinder means for raising and lowering the tail section.

### 2. *Differences Between the Claimed Invention and the Prior Art*

At trial, Deere called as an expert Dr. Goering, who testified that the Smith patent was "closer" than other prior art because it was "for a variable-width plow that has adjustability of its width on the go, and it also includes compensation within its steering means."

Dr. Goering testified about five differences between the plow claimed in the '333 patent and the plow disclosed in the Smith reference. First, the claimed combination includes a hydraulic cylinder to rotate the plow units; the Smith reference shows a screw to perform that function. He said it would have been obvious to substitute the former for the latter. Second, the claimed combination includes a steered rear wheel that turns in a direction opposite that of the tractor; the Smith reference shows a

steered front wheel that turns in the same direction as the tractor. He said it would have been obvious to substitute the steered rear wheel disclosed in the Mincham reference for the steered front wheel disclosed in the Smith reference. Third, a hydraulic cylinder raises and lowers the tail section in the claimed invention; a screw does so in the Smith reference. He said it would have been obvious to substitute the hydraulic cylinder disclosed as raising and lowering the tail section in the Wareing reference for the screw disclosed in the Smith reference. Fourth, the claimed combination includes a rearwardly extending tail beam from the last plow unit, not disclosed in the Smith reference. Fifth, the claimed invention requires that the hitch pivot be the only support for the front end of the plow, whereas the plow disclosed in the Smith patent is applicable to more than one type of hitch.

DMI disputed Dr. Goering's assertion that the plow disclosed in the Smith reference has "on-the-go" width adjustability. Counsel for DMI acknowledged at oral argument, however, that DMI had no witness of its own to make that point at trial, but relied on its cross-examination of Dr. Goering. DMI also disputes Dr. Goering's assertion that the invention disclosed in the Smith patent has compensation within its steering means, but cites to no page in the record showing that evidence of this was presented to the jury.

DMI's briefs explain in great detail what DMI says are the flaws in the evidence that Deere presented at trial. Whether we might, if sitting as a jury, consider those flaws fatal is not the question, however. Nowhere does DMI show that it presented evidence tending to rebut Deere's or to demonstrate to the jury the flaws it now sets forth.

■ "An appeal is not a means for counsel to cure mistakes and omissions made at trial." *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1108 (Fed. Cir.1986). Our review is limited to the record of the case. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555, 225

USPQ 26, 30 (Fed.Cir.1985). Nor does this court determine cases *de novo*. One who fails to tell his story convincingly to the jury may not correct that failure on appeal when his adversary has presented evidence on which a reasonable jury may reach the conclusion it did.

DMI's briefs attempt also to denigrate Dr. Goering's qualifications and credibility. The jury evidently believed Dr. Goering, however, and this court may not substitute its own credibility determinations for those of the jury. *Railroad Dynamics, Inc.*, 727 F.2d at 1514, 220 USPQ at 937. "Determining the weight and credibility of the evidence is the special province of the trier of fact." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 856, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606, 214 USPQ 1, 7 (1982).

### 3. Level of Ordinary Skill in the Art

Though DMI's brief questions Dr. Goering's evaluation of the level of ordinary skill in the art of plow design, witnesses for both parties testified consistently on that subject, saying a person of ordinary skill would have either a college degree with some experience, or years of experience.

### 4. Objective Evidence

The parties stipulated before trial that DMI had granted royalty-requiring licenses to two companies under the '333 patent. The court read that stipulation to the jury at the beginning of trial, and the licenses were mentioned in testimony. There was conflicting testimony on whether acquisition of the invention claimed in the '333 patent was the reason purchases were made of the plow sold by DMI and its licensees.

■ The jury was obviously not convinced by the evidence presented to it of commercial success. Where, as here, there are conflicting elements in the evidence, neither the trial court on JNOV nor this court may substitute its choice for that of the jury. *Connell*, 722 F.2d at 1546, 220 USPQ at 197; *accord Anderson v. City of*

*Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

### C. Conclusion on Obviousness

Under 35 U.S.C. § 282, a patent is presumed valid. That presumption is a procedural device, not substantive law. The party challenging validity has the burden of persuading the decision-maker that the patent can no longer be accepted as valid. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875–76 (Fed.Cir.1983).

■ Here Deere presented substantial evidence, in this instance unrebutted by DMI, from which the jury could have concluded that the invention set forth in claims 1, 6, and 8 would have been obvious to one of ordinary skill. We conclude that the district court did not err in denying DMI's motion for JNOV, the record as a whole containing substantial evidence which supports the jury's factual findings underlying the legal conclusion of obviousness.

### II. Denial of DMI's Motion for a New Trial

■ When this court reviews a denial of a motion for a new trial, it determines whether the denial was an abuse of discretion. *Railroad Dynamics, Inc.*, 727 F.2d at 1512, 220 USPQ at 935. That question turns on whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair. DMI says that the district court prevented a fair trial when it: (1) excluded the testimony of two rebuttal witnesses; (2) refused to give a jury instruction on modification of prior art; and (3) excluded evidence of commercial success.

### A. Rebuttal Testimony

DMI and Deere attended a final pre-trial conference required by the court's Standing Order on Pre-Trial Conferences, under which each party was to submit lists of all witnesses it might call. Only listed witnesses would be permitted to testify at trial except for good cause shown.

DMI then prepared a pre-trial order that was signed by both parties and by the court. DMI's list of witnesses in that order contained no experts. In a section entitled "It Is Understood By The Parties," however, DMI said it reserved the right to call experts in rebuttal, naming a patent lawyer and two technical experts. Deere struck that statement from its copy and telephoned DMI to say it was doing so. DMI objected, but did not communicate its objection to the court.

Not until the fourth day of the five-day trial did DMI notify Deere that it planned to call two rebuttal expert witnesses not listed on the pre-trial order. One of those witnesses was named in the paragraph that Deere struck; the other was nowhere listed.

The court found that DMI had not shown good cause for failure to notify Deere in time to avoid surprise. DMI has not shown that the court abused its discretion in excluding its two witnesses.

■ The Federal Circuit reviews procedural matters that are not unique to patent issues under the law of the particular regional circuit court where appeals from the district court would normally lie. *Panduit Corp. v. All States Plastic Manufacturing Co., Inc.*, 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984). The Seventh Circuit has stated, "decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court and will not be reversed on appeal unless they constitute a clear abuse of discretion." *Ellis v. City of Chicago*, 667 F.2d 606, 611 (7th Cir.1981). The trial judge's ruling was consistent with the policies of Fed.R.Civ.P. 26(b)(4). *See Gorby v. Schneider Tank Lines, Inc.*, 741 F.2d 1015, 1018 (7th Cir.1984). The Advisory Committee's notes to the 1970 amendments encourage discovery of information held by expert witnesses in order to narrow issues and eliminate surprise at trial.

■ DMI has not shown that its substantive rights have been affected by the exclusion, as it must to show an abuse of discretion. *Ellis*, 667 F.2d at 611 (party challenging exclusion has burden of demonstrating that "substantial" rights were prejudiced). Though two of its witnesses were excluded, moreover, DMI was not precluded from presenting rebuttal testimony. It recalled two of its witnesses for rebuttal.

### B. *Evidence of Commercial Success*

In the pre-trial order the parties agreed, as above indicated, that DMI had licensed White Manufacturing Co. and International Harvester to manufacture and sell plows under the '333 patent, and that the licensees were required to pay royalties. The parties also agreed that the license to International Harvester was modified to include another plow after DMI brought suit for infringement. At the beginning of trial, the court read that statement of uncontested facts to the jury.

During trial, DMI attempted to introduce its license with White and its consent decree with International Harvester. The court sustained Deere's objections and the evidence was excluded. DMI now complains that the exclusion was unfair.

■ DMI has not shown that the exclusion has prejudiced its substantive rights. The substance of the excluded documents was before the jury in the statement of uncontested facts and in testimony of some of DMI's witnesses who mentioned the licenses. DMI has not shown that the court abused its discretion. *See Ellis*, 667 F.2d at 611–12.

### C. *Jury Instructions*

■ DMI asserts that the district court judge erred in refusing to give this instruction: "A modification of a prior art patent or device that would render that device unworkable for its intended purposes does not suggest that such modification be made." DMI stresses in its briefs that modifying the prior art Smith plow as Deere's expert witness suggested would cause the plow to function contrary to Smith's intention. At oral argument, however, counsel for DMI acknowledged that

the record contains no testimony of a witness saying that the modified Smith plow would function contrary to the teachings of the reference. However valid the proferred instruction may be as an abstract proposition, it cannot be given after a trial involving no evidence relating to it.

■ "In a jury trial, a court should not instruct on a proposition of law about which there is no competent evidence." *Nestier Corp. v. Merasha Corp.-Lewisystems Division*, 739 F.2d 1576, 1579, 222 USPQ 747, 750 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985). DMI argues that the jury should have been able to see without the help of testimony that the modified Smith plow would not function as intended. Conjecture and speculation are not competent evidence, however. *Id.* at 1579, 222 USPQ at 750. DMI has simply failed to show that the trial judge abused his discretion in refusing to give DMI's proferred instruction.

We have considered the rest of DMI's arguments, and find them without merit.

### CONCLUSION

Appeal No. 86–797 is dismissed, no judgment having been entered.

In Appeal No. 86–775, the judgment appealed from is affirmed.

AFFIRMED.