Randolph M. HOWES, Janice Kinchen Howes, and Arrow International, Inc.

v.

MEDICAL COMPONENTS, INC., and American Hospital Supply Corp.

Civ. A. No. 84–4435.

United States District Court, E.D. Pennsylvania.

June 1, 1990.

Albert E. Fey, New York City, for plaintiffs.

William H. Eilberg, Jenkintown, Pa., John W. Chestnut, Chicago, Ill., Jeremy D. Mishken, and Richard F. McMenamin, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant Medical Components, Inc. ("MedComp") and defendant American Hospital Supply Corp. ("AHS") have moved for a stay of the injunction issued on May 7, 1990. For the reasons set forth below, I shall deny both motions.

### I.

Plaintiffs filed this patent infringement suit against defendants on September 14, 1985. The patented device is a triple-lumen catheter. A catheter is basically a tube which is inserted into a vein for one or more purposes, such as draining fluids, injecting drugs or nutrients, or measuring blood pressure within a vein or artery. A triple-lumen catheter has three lumens or passageways, each of which is capable of carrying a different fluid or performing a different diagnostic function.

After a long and protracted history, which includes three motions for summary judgment, one reissue and two reexamination proceedings in the United States Patent Office, and one appeal to the Federal Circuit, this case went to trial before a jury in April 1990. The jury found that both defendants had willfully infringed the Howes reissue patent and awarded damages to plaintiffs of approximately $4.7 million. After the trial, I handed down a Non–Final Judgment and Injunction which was docketed by the Clerk on May 7, 1990.

Paragraphs 11 and 13 of the Non–Final Judgment and Injunction permanently enjoin the defendants from infringing or actively inducing infringement of any one or more of Claims 7 and 11–14 of the Howes reissue patent, United States Patent Re. 31,783. Paragraphs 12 and 14 of the Non–Final Judgment and Injunction permit the defendants to sell their infringing triple-lumen catheters until June 1, 1990.

Defendants now move for a stay of the May 7, 1990 injunction pending the final

determination of an appeal which will be filed after entry of final judgment.

## II.

It is well-settled that a party seeking to stay an injunction pending appeal must make a strong showing that (1) it is likely to succeed on the merits of the appeal; and must prove that (2) unless a stay is granted, it will suffer irreparable injury; (3) no substantial harm will come to other interested parties; and (4) a stay will do no harm to the public interest. *See, e.g., Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 674 F.Supp. 1074, 1077 (S.D.N.Y.1987) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2904 (1973)). In practice, this test reduces to a two-part analysis: Courts are to (1) assess the movant's chances for success on appeal and (2) weigh the equities as they affect the parties and the public at large. *E.I. DuPont De Nemours & Co. v. Phillips Petroleum, Co.*, 835 F.2d 277, 278 (Fed.Cir.1987).

## A. LIKELIHOOD OF SUCCESS ON APPEAL

Neither AHS nor MedComp has made a showing sufficient to convince me that they are likely to succeed on appeal.[1] AHS and MedComp state that they intend to appeal from the jury's verdict on the issues of claim construction,[2] infringement,[3] and validity.[4]

---

1. With respect to arguments concerning its likelihood of success on appeal, MedComp adopts the arguments presented in AHS's memorandum in support of its motion for a stay of the injunction. *See* Memorandum of Defendant Medical Components, Inc. in Support of Its Motion for Stay of Injunction at 1.

   **I. CONSTRUCTION OF CLAIM 7**

   Do you find that Claim 7 of the Howes reissue patent is limited to catheters like those shown in Figure 3 of the Howes reissue patent, or do you find that Claim 7 covers catheters like those shown in both Figures 3 and 5 of the Howes reissue patent?

   (Check the appropriate item.)

   | Claim 7 limited to Figure 3 | Claim 7 covers both Figures 3 and 5 |
   | --- | --- |

2. During the liability phase of the trial, the jury unanimously answered the following interrogatory by checking "Claim 7 covers both Figures 3 and 5":

3. During the liability phase of the trial, the jury unanimously answered "Yes" with respect to the following interrogatories pertaining to infringement:

   **II. INFRINGEMENT**

   A. Have the plaintiffs proven, by a preponderance of the evidence, that defendant *AHS* has made or sold triple lumen catheters that infringe one or more of the following claims of the Howes reissue patent?

   (Check "Yes" or "No" for each of the following categories of claims.)

   |  | YES | NO |
   | --- | --- | --- |
   | Claim 7 | ___ | ___ |

   (If you answered "No" for Claim 7, you must also answer "No" for Claims 11–14.)

   |  | YES | NO |
   | --- | --- | --- |
   | Claims 11–14 | ___ | ___ |

   B. Have the plaintiffs proven, by a preponderance of the evidence, that defendant *MedComp* has made or sold triple lumen catheters that infringe one or more of the following claims of the Howes reissue patent?

   (Check "Yes" or "No" for each of the following categories of claims.)

Defendants incorrectly assert that the jury's rejection of the Patent Examiner's statements concerning claim interpretation made during the two reexamination proceedings "creates a substantial legal question which justifies a stay in this case." *See* AHS's Memorandum in Support of Its Motion for a Stay of the Injunction at 4. In support of that assertion, defendant AHS relies on *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277 (Fed.Cir.1987). Defendants attempt to characterize the jury's finding that the claims of the Howes reissue patent cover both Figure 3 and Figure 5 catheters as a legal conclusion, and then contend that, since claim construction is a question of law, the Federal Circuit may arrive at a legal conclusion different from that of the jury. *See* AHS's Memorandum in Support of Its Motion for a Stay of the Injunction at 8. These assertions mischaracterize both the law on claim construction and the jury's finding on the scope of Claim 7 of the Howes reissue patent.

When the meaning of a claim term is disputed, underlying factual questions may arise and claim construction is properly left to the jury under appropriate instructions. *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 974, 976–77 (Fed.Cir.1985). *See also Howes v. Medical Components, Inc.*, 814 F.2d 638, 643, 646 (Fed.Cir.1987). In the present action, the Federal Circuit vacated a summary judgment of non-infringement and remanded this case because "the record is simply incomplete with too many unresolved factual issues to properly construe the scope of claim 7." *Howes*, 814 F.2d at 646. The jury has now resolved those factual issues.

Furthermore, the jury's resolution of these factual issues is sufficiently supported by the evidence. The scope of Claim 7 of the Howes reissue patent was a key factual issue in dispute in the present case. The evidence before the jury on this issue included the Patent Office reexamination files, the original and reissue patent files, the Federal Circuit opinion, expert testimony by patent law experts, and technical experts on both sides, the testimony of Dr. Howes, his attorney, Mr. Smith, Patent Examiner Truluck, and others. The jury had before it the Federal Circuit opinion in this case, in which that court interpreted the disputed language of Claim 7 of the Howes reissue patent as broad enough to cover both Figures 3 and 5, unless the meaning of that language changed during

|  | YES | NO |
|---|---|---|
| Claim 7 | ____ | ____ |

(If you answered "No" for Claim 7, you must also answer "No" for Claims 11–14.)

|  | YES | NO |
|---|---|---|
| Claim 11–14 | ____ | ____ |

4. During the liability phase of the trial, the jury unanimously answered "No" with respect to the following interrogatory pertaining to patent validity:

## IV. PATENT VALIDITY

A. Have defendants MedComp and AHS proven, by clear and convincing evidence, that any of the asserted claims of the Howes reissue patent are invalid?

(Check "Yes" or "No" for each of the following categories of claims.)

|  | YES | NO |
|---|---|---|
| Claim 7 | ____ | ____ |

(If you answered "No" for Claim 7, then you must also answer "No" for Claims 11–14.)

|  | YES | NO |
|---|---|---|
| Claims 11–14 | ____ | ____ |

the reissue proceeding. Plaintiffs offered evidence that Dr. Howes intended Claim 7 of the original Howes patent to cover both Figures 3 and 5, and that neither Dr. Howes nor his patent counsel did anything during the reissue proceeding to limit Claim 7 to Figure 3. Based upon this evidence, the jury resolved the issue as to the scope of Claim 7 in plaintiff's favor.

AHS's reliance on the Federal Circuit's opinion concerning a stay in *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277 (Fed.Cir.1987), is misplaced. AHS contends that "[t]he *DuPont* case is particularly pertinent here because there was a conflict between the decision of the patent examiner and the decision at the trial." *See* AHS' Memorandum in Support of Its Motion for a Stay of the Injunction at 3.

In *DuPont*, the district court concluded that certain claims of DuPont's patent were valid even though a Patent Examiner had rejected all of the patent's claims in non-final office actions during an uncompleted reissue/reexamination proceeding in the Patent Office. *E.I. DuPont De Nemours v. Phillips Petroleum Co.*, 656 F.Supp. 1343, 1352–53 (D.Del.1987). The District Court concluded that there was no collateral estoppel based on the Patent Examiner's rejections, *id.* at 1353, and entered a permanent injunction against Phillips.

The Federal Circuit granted Phillips' motion to stay the injunction pending appeal because, among other reasons, it found that the conflict between the Patent Examiner's "rejection of DuPont's claims as invalid in view of prior art and the district court's ruling of validity ... supports Phillips' argument that substantial legal questions concerning claim interpretation exist." *DuPont*, 835 F.2d at 278.

In *DuPont*, the substantive legal question concerning claim construction was "whether the district court erred in incorporating two extraneous property limitations into the claims." *E.I. DuPont De Nemours & Co. v. Phillips*, 849 F.2d 1430, 1432 (Fed.Cir.1988). On the merits of the appeal, the Federal Circuit held that "the district court was wrong as a matter of law in reading into the claims at issue the two extraneous property limitations." *Id.* at 1434.

In the present case, no such comparable legal issue pertaining to claim interpretation existed. The conflict was between the Patent Examiner's interpretation of the scope of Claim 7 and the Federal Circuit's interpretation of the scope of Claim 7, assuming that nothing happened during the reissue proceeding to limit that scope. Based upon its determination of certain factual issues, the jury was required to choose between those two conflicting interpretations as to the scope of Claim 7.

Therefore, in the present case, the conflicting interpretations of the claim at issue existed *prior to* the commencement of the trial, and, thus, the jury had to decide which interpretation was correct in light of its findings with respect to certain factual issues. Whereas, in the *DuPont* case, the conflicting interpretations of the claim at issue did not exist until *after* the completion of the trial, and, thus, the Federal Circuit had to decide which interpretation was correct—that of the Patent Examiner or the district court. Furthermore, in the present case, unlike *DuPont*, the decision at trial and the decisions of the Patent Examiner were consistent in that all of the decisions concluded that the claims of the patent at issue were valid.

The jury's rejection of the Patent Examiner's statements in favor of the other evidence bearing on the scope of Claim 7 simply does not bolster AHS's chances of success on appeal. As this court held in its August 8, 1988 Memorandum and Order denying defendants' second summary judgment motion on non-infringement, and as this court properly instructed the jury before it began its deliberations, the Patent Examiner's statements on claim construction were merely evidence to be considered and were not binding on the jury. Moreover, the jury had a solid factual basis for rejecting the Examiner's statements on claim scope. Therefore, the jury's decision not to afford the Examiner's statements controlling weight does not argue in favor of a stay of the injunction.

Likewise, defendants' attempt to circumvent the jury's finding that the Howes reissue patent is valid and, thus, non-obvious does not support a stay of the injunction. Although obviousness is ultimately a question of law, it is based upon underlying factual inquiries such as the scope and content of the prior art, the differences between the prior art and the claims at issue, the level of ordinary skill in the art, and objective evidence of non-obviousness known as secondary considerations. *See, e.g., Bausch & Lomb Inc. v. Barnes-Hind/Hydrocurve Inc.*, 796 F.2d 443, 447 (Fed.Cir.1986). The jury made its validity/non-obviousness finding based on this court's proper instructions on the law of obviousness, which included instructions on these factual inquiries.

The disputed factual issues on non-obviousness were decided by the jury. The arguments that defendants assert in support of their motions are restatements of the arguments and evidence that were presented to and rejected by the jury at trial. They are not legal issues which will concern the Federal Circuit. *See, e.g., Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1234 (Fed.Cir.1989) ("It is established that the jury may decide the questions of anticipation and obviousness, either as separate verdicts or en route to a verdict on the question of validity, which may also be decided by the jury."); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 425 (Fed.Cir.1986) ("The law presumes the jury made the [factual] findings necessary to support its verdict, and the required findings are controlled by the court's instructions to the jury.").

In order to prevail on appeal on the issues of claim construction, infringement, and validity, absent some legal error during the trial, defendants will have to show that there was *not* substantial evidence to support the jury's factual findings. *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 425 (Fed.Cir.1986). " 'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Id.* (quoting *Perkin Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984)). I conclude that there was more than sufficient credible evidence from which the jury could find for plaintiffs on the issues of claim construction, infringement, and validity. Consequently, I further conclude that it is *not* likely that defendants will succeed on the merits of their appeal.

## B. BALANCING OF THE EQUITIES

### 1. Harm to Defendants

Both defendants contend that they will suffer irreparable harm if the May 7, 1990 injunction is not stayed pending appeal.

AHS contends that it will suffer irreparable harm if the injunction continues in effect before resolution of the appeal in this case and that plaintiffs will be only slightly harmed if the injunction is stayed. AHS maintains that it will lose its market share of the triple-lumen catheter market because, once their customers switch to another supplier, it is unlikely that those customers would resume purchasing from AHS if the jury's verdict is reversed on appeal. AHS asserts that the harm which plaintiffs stand to suffer if the injunction is stayed is primarily financial and, thus, not irreparable. Further, AHS argues that Arrow will not be substantially harmed by a stay because "Arrow already faces competition from 10 to 12 other companies, and there is no guarantee that Arrow will gain any significant business if AHS is enjoined."

Plaintiffs have consistently sought to exclude others from the triple-lumen catheter market. The Howes parties have granted only one license to manufacture and sell their patented device and that license is exclusive. Arrow, the exclusive licensee, has spent almost eight years in marketing the Arrow–Howes triple-lumen catheter under that exclusive license. During most of that time, Arrow has competed with infringers such as defendants, and the Howes parties have been deprived of their right to exclude others.

The presence in the market of 10 to 12 other competitors selling infringing triple-lumen catheters does not mitigate the harm that plaintiffs will suffer if the injunction is stayed. The 10 to 12 other competitors are all unlicensed competitors which pay no royalties to plaintiffs. A stay would only increase the incentive for these companies to continue their infringement.

Contrary to AHS's contention, plaintiffs stand to suffer irreparable harm if AHS's motion is granted. If defendants are permitted to continue selling their infringing products, the prices and profits which Arrow receives for its products will decline even further and Arrow will be faced with further erosion of its market share. More importantly, at least another year of exclusivity for plaintiffs will have passed while the Federal Circuit considers the merits of defendants' appeal, leaving plaintiffs with less than 4 years of exclusivity before the Howes reissue patent expires in February 1995.

There is no doubt that AHS will lose its share of the triple-lumen catheter market during the appeal process if its motion for a stay is *not* granted. However, even a loss of six million dollars a year does not necessarily constitute irreparable harm to a multi-billion dollar enterprise.[5] Moreover, it is highly likely that, if AHS is successful on appeal, it will successfully re-enter the triple-lumen catheter market because it has the money and marketing capabilities to do so.

In support of its motion for a stay of the injunction, MedComp contends that it is unlikely that, if the verdict is reversed on appeal, it would regain its triple-lumen catheter business. Further, MedComp argues that if the injunction is stayed plaintiffs would not suffer substantial harm because 90% of its sales are made in foreign countries and Arrow has no reasonable expectation of exclusivity in foreign markets.

MedComp, however, admits that the sale of a product in a foreign country does not, in itself, avoid infringement, if the product is made in the United States. Therefore, even MedComp's foreign sales are still infringing because its triple-lumen catheters are manufactured in the United States. Even though Arrow may *not* have a reasonable expectation of exclusivity in all foreign markets, it does have a reasonable expectation that it will be the only manufacturer of triple-lumen catheters in the United States. Consequently, MedComp's foreign sales of catheters harms Arrow just as much as AHS's domestic sales.

MedComp is a small company and does not have the financial backing of a multi-billion dollar corporation, as does AHS. Therefore, if the jury verdict is reversed on appeal, MedComp may have more difficulty re-entering the triple-lumen catheter market than AHS. Nonetheless, the loss of market share is always the inevitable result of this type of injunction, and MedComp has not offered any evidence to show that the harm that it will suffer is any more severe than the loss of its sales of triple-lumen catheters.[6]

I conclude that defendants have *not* met their burden of proving that they will be irreparably harmed if the injunction is not stayed. I further conclude that the equities lie not in protecting an adjudicated infringer from loss of market share, but instead lie in protecting the prevailing plaintiffs from further loss of exclusivity. "The nature of the patent grant thus weighs against holding that monetary damages will always suffice to make the patentee whole, for the principal value of a patent is its statutory right to exclude." *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed.Cir.1987).

### 2. Harm to the Public[7]

The public interest will not be harmed by the May 7, 1990 injunction because the

---

5. AHS is now owned by Baxter Travenol Corporation. In 1987, Baxter Travenol's sales were over six billion dollars. *See* Plaintiffs' Trial Exhibit 69.

6. MedComp does *not* contend that the injunction will cause it to go out of business.

7. In its memorandum in support of its motion for stay of the injunction, MedComp does *not* contend that the public will be harmed by the

injunction will not result in any interruption in the supply of triple-lumen central venous catheters. No harm to the public is imminent because Arrow can fully meet the increased demand that the injunction creates for the Arrow–Howes triple-lumen catheter. *See* Trial Transcript at 1795–98 & 1800–01.

Furthermore, as AHS is quick to point out, if it "is prevented from selling triple lumen catheters after June 1, 1990, AHS's customers will switch its [sic] purchases to other suppliers, either Arrow or one of the 10 to 12 other companies who are making triple lumen catheters." *See* Defendant American Hospital Supply's Memorandum in Support of Its Motion for a Stay of the Injunction at 10. Therefore, there is no likelihood that the public will suffer any interruption in the supply of triple-lumen catheters because of the withdrawal of AHS and MedComp from the triple-lumen catheter market.

Moreover, plaintiffs agreed to give defendants from May 7, 1990 until June 1, 1990 to sell off their inventory of triple-lumen catheters. This period of time provided hospitals using AHS's infringing products with an orderly transition period within which to find another supplier of triple-lumen catheters.

AHS maintains that its infringing triple-lumen catheter made of polyvinylchloride ("PVC") is superior to the Arrow–Howes triple-lumen catheter made of polyurethane, and that the heparin coating on its infringing catheter is advantageous because it reduces blood clotting and the possibility of infection. *See* AHS's Memorandum in Support of Its Motion to Stay the Injunction at 5. AHS admits that this technology is not patented, but contends that as a result of the injunction the alleged advantageous features of its infringing catheter will be copied by other infringers in the next year, effecting a loss "of any advantage of product differentiation which it now has." *See* Declaration of Donald Bobo in Support of American Hospital Supply's Motion for a Stay of the Injunction at

¶ 5. Further, AHS contends that the public interest would best be served by allowing the customers to choose between the Arrow–Howes triple-lumen catheter and AHS's infringing catheter.

AHS's contentions are unpersuasive. First of all, there is no evidence or consensus of opinion that a PVC catheter is superior to a polyurethane catheter. In fact, Arrow believes that polyurethane is a superior material for a triple-lumen central venous catheter which is intended to remain in-dwelling for an extended period of time. *See* Plaintiffs' Memorandum in Opposition to Defendant American Hospital Supply's Emergency Motion for a Stay of the Injunction at 24 and Exhibit 4 at ¶¶ 4 & 5. Second, at least one other infringer, Abbott Laboratories ("Abbott"), already sells a heparin-coated PVC catheter. *See* Plaintiffs' Memorandum in Opposition to Defendant American Hospital Supply's Emergency Motion for a Stay of the Injunction, Exhibit 4 at ¶ 10. In addition, Arrow has been selling heparin coated versions of the Arrow–Howes triple-lumen catheter since 1984. *See id.* at ¶ 7. Therefore, if hospitals really want heparin-coated PVC triple-lumen catheters, they can purchase them from Abbott. If the hospitals want heparin-coated triple-lumen catheters, regardless of the material out-of-which they are manufactured, they can purchase them from Arrow.

### III.

The factors that favor a stay of an injunction pending appeal are *not* present in this case. Defendants have failed to meet their burden of making a strong showing that they are likely to succeed on the merits of an appeal. Nor has either defendant shown that it will suffer irreparable harm if the injunction is *not* stayed during the pendency of an appeal. Finally, neither defendant has shown that the public will be harmed if the injunction is not stayed.

Furthermore, I conclude that the equities in this case strongly support the May 7, 1990 injunction remaining in effect pending

injunction. However, AHS does contend that the public will be harmed by the injunction, and

those contentions are discussed in the body of this memorandum.

**536**

the appeal of this action. "Without [the] injunctive power of the courts, the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution and Congress, to promote the progress of the useful arts, would be seriously undermined." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577–78 (Fed.Cir.1983).

An appropriate order follows.

## ORDER

Upon consideration of the motions of defendants Medical Components, Inc. and American Hospital Supply Corp. for a stay of the injunction, plaintiffs' responses, and for the reasons stated in the accompanying memorandum, IT IS ORDERED that

1. Medical Components, Inc.'s motion for a stay of the injunction is DENIED.

2. American Hospital Supply Corp.'s motion for a stay of the injunction is DENIED.

3. The permanent injunction entered on May 7, 1990 shall remain in effect pending the final determination of an appeal which will be filed after final judgment is entered.

Telephone notice of this order shall be given forthwith.