60 F.3d 843
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 AMERICAN HOME PRODUCTS CORPORATION and Herchel Smith,
Plaintiffs-Appellants,
v.
JOHNSON & JOHNSON and Ortho Pharmaceutical Corporation,
Defendants/Cross-Appellants.
 Nos. 94-1209, 94-1210.
 United States Court of Appeals, Federal Circuit.
 June 29, 1995.
 Rehearing Denied; Suggestion
for Rehearing In Banc Declined
Aug. 9, 1995.
 
 Before MAYER, Circuit Judge, BENNETT, Senior Circuit Judge, and PLAGER, Circuit Judge.
 MAYER, Circuit Judge.
 
 
 1
 American Home Products Corporation and Herchel Smith appeal from an order denying their motion for judgment as a matter of law or, in the alternative, for a new trial, as well as from a judgment of the United States District Court for the Eastern District of Pennsylvania, No. 91-5594 (E.D. Pa. Dec. 21, 1994, as amended Jan. 3, 1995). Johnson & Johnson Corporation and Ortho Pharmaceutical Corporation cross-appeal. The judgment was entered in accordance with a jury verdict that defendants Johnson & Johnson Corporation and Ortho Pharmaceutical Corporation had not infringed United States Patent No. 4,002,746 and that American Home Products Corporation had not committed unfair competition. Because we conclude that any error was harmless, we affirm the judgment of the district court in all respects.
 
 Background
 
 2
 American Home Products Corporation and Herchel Smith (collectively AHP) are exclusive licensee and assignee, respectively, of United States Patent No. 4,002,746 (the '746 patent), entitled "Synthesis of Gon-4-enes." The patent claims both a class of progestationally active compositions and a method of using those composition. At issue here is claim 6 of the '746 patent, added after reexamination, which reads:
 
 
 3
 A method of preventing conception in a female which comprises administering a therapeutic composition comprising a progestationally effective amount of 17alpha-ethynyl-18-methyl-19-nortestosterone 17-acetate [norgestrel acetate] and a pharmaceutical carrier.
 
 
 4
 In addition to the '746 patent, AHP was previously the owner of a number of related patents, including No. 3,959,322 (the '322 patent). The '322 patent claimed compositions of norgestrel acetate and 17alpha-ethynyl-18-methyl-19-nortestosterone [norgestrel], which differs from norgestrel acetate only in the presence of a hydroxy group, rather than an acetate group, at the 17-position on the steroid skeleton. The '322 patent expired on November 26, 1991.
 
 
 5
 Like AHP, Johnson & Johnson Corporation and Ortho Pharmaceutical Corporation (collectively J&J) manufacture and market contraceptives. Of particular relevance here is J&J's norgestimate contraceptive, which is structurally related to the class of compounds protected by AHP's patents. Norgestimate differs from norgestrel acetate only in the presence of an oxime group, rather than a ketone, at the 3-position.
 
 
 6
 In January of 1990, Ortho Pharmaceutical filed an action for a declaratory judgment that the '322 patent was invalid. AHP filed a counterclaim alleging that norgestimate infringed the patent, and named Johnson & Johnson as an additional defendant. After a bench trial, the district court held that claims 5, 19, 40 and 43 of the '322 patent were not invalid, and found that J&J's norgestimate infringed the claims either directly or under the doctrine of equivalents. Ortho Pharmaceutical Corp. v. Smith, 18 USPQ2d 1977, 1985-86 (E.D. Pa. 1990), aff'd, 959 F.2d 936, 22 USPQ2d 1119 (Fed. Cir. 1992). The district court enjoined J&J from making, using, or selling norgestimate products until the '322 patent expired in November of 1991. Id. J&J did not appeal the infringement findings.[1]
 
 
 7
 On June 4, 1990, shortly before the Ortho case went to trial, AHP filed a request in the Patent and Trademark Office for reexamination of the '746 patent. As a result of reexamination, on September 3, 1991, the examiner confirmed the patentability of claims 1 through 5 of the '746 patent, and determined that new claim 6 was patentable as well. That same day, AHP filed this suit alleging that J&J was preparing to infringe claim 6 of the newly reexamined '746 patent by marketing a norgestimate-containing oral contraceptive after the '322 patent expired in November 1991. AHP also moved for a preliminary injunction.
 
 
 8
 AHP contended that the use of norgestimate infringed the '746 patent under the doctrine of equivalents, proffering two theories of infringement. First, it suggested that norgestimate and norgestrel acetate are equivalent because each is equivalent to norgestrel. To support this "double equivalence" theory, AHP pointed to the ruling in Ortho that norgestimate infringed claim 19 of the '322 patent, which covers the compound norgestrel acetate.[2] AHP said this prior judgment showed that it would probably succeed in showing that the use of norgestimate infringed the method of using norgestrel acetate covered by claim 6 of the '746 patent as well.
 
 
 9
 In the alternative, AHP argued that the use of norgestimate infringes claim 6 because norgestimate metabolizes in the body to norgestrel via norgestrel acetate, and that the existence of norgestrel acetate as an intermediate in this pathway amounts to infringement under the doctrine of equivalents. J&J disagreed, contending that the body's metabolism of norgestimate did not produce norgestrel acetate in sufficient amounts to meet the "progestationally effective amount" limitation found in claim 6. J&J also moved for summary judgment on the defense of res judicata, arguing that AHP's infringement suit was barred by the earlier Ortho litigation.
 
 
 10
 The district court granted the motion for a preliminary injunction and denied J&J's motion for summary judgment. American Home Products Corp. v. Johnson & Johnson Corp., 22 USPQ2d 1561, 1568 (E.D. Pa. 1991) (order granting preliminary injunction). J&J appealed to this court, and, while its appeal was pending, filed an answer in the district court denying infringement. J&J also asserted a counterclaim for unfair competition, alleging that AHP had filed its infringement suit in bad faith. AHP moved to dismiss the counterclaim, and, in the alternative, for summary judgment. The district court denied these motions.
 
 
 11
 A divided panel of this court vacated the order granting the injunction. American Home Products Corp. v. Johnson & Johnson Corp., 979 F.2d 216, 25 USPQ2d 1954 (Fed. Cir. 1992) (nonprecedential opinion). The court rejected the double equivalence theory as an improper extension of patent protection beyond the seventeen year term of the patents protecting norgestrel and its uses. As for the direct equivalence theory, the court concluded that the record was inadequate to show whether enough norgestrel acetate was produced as norgestimate metabolized to norgestrel to satisfy the "progestationally effective amount" limitation of claim 6. The court also directed the district court to consider the equities relating to the doctrine of equivalents to determine whether its application was warranted in this case.[3]
 
 
 12
 The dissent, however, concluded that the district court had properly relied on Ortho's holding that norgestimate infringed claims to norgestrel acetate itself, that issue preclusion barred further consideration of the equivalence of the two compounds, and agreed with the district court that AHP had showed a likelihood of success on the merits.
 
 
 13
 A jury trial ensued, after which the judge submitted both the question of J&J's infringement under the doctrine of equivalents and of AHP's unfair competition to the jury. The jury returned a verdict for J&J on the infringement claim -- that the use of norgestimate did not infringe claim 6 of the '746 patent -- and on J&J's counterclaim found that AHP had not engaged in unfair competition. The trial judge entered judgment in accordance with the jury's verdict on both the claim and the counterclaim, and later denied AHP's motion for a new trial. Both parties have appealed.
 
 Discussion
 
 14
 AHP challenges the district court's denial of its motion for a new trial. We review that denial for abuse of discretion. DMI, Inc. v. Deere & Co., 802 F.2d 421, 427, 231 USPQ 276, 280 (Fed. Cir. 1986). Under this standard, we must determine "whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." Id. AHP raises three instances of reversible error: first, the trial court's decision to allow the jury to decide the question of infringement under the doctrine of equivalents; second, the failure to distinguish clearly between AHP's infringement claim and J&J's unfair competition counterclaim in the instructions to the jury; and third, the decision to let the jury hear evidence on and decide the unfair competition counterclaim.
 
 
 15
 First, AHP says it was error to let the jury decide infringement under the doctrine of equivalents because that is an equitable doctrine, the resolution of which falls to the judge, not the jury. On this point, we note only that the question of who decides infringement under the doctrine of equivalents is currently before this court in Hilton Davis Chemical Co. v. Warner-Jenkinson Co., No. 93-1088 (Fed. Cir. argued Feb. 9, 1994) (in banc); we leave the exposition of the doctrine to the in banc court in that case. We think, however, that the trial court's decision to submit the question to the jury was consistent with the earlier panel decision in this case.
 
 
 16
 Nor are we persuaded by AHP's argument that flawed jury instructions warrant reversal here. The instructions told the jury that to prove infringement under the doctrine of equivalents, "AHP must show that J&J used, copied, misappropriated or stole the patented invention without making any substantial changes so that equitable relief is necessary to prevent a fraud on the patent holder." The court then instructed the jury to consider a number of other factors in addition to the traditional three-part function/way/result test, including the prosecution history, the substantiality of any change, and J&J's conduct in the design of its norgestimate product.[4]
 
 
 17
 On the unfair competition claim, the judge set out the relevant test, telling the jury that for J&J to succeed, it must first prove that AHP's suit was objectively baseless - that no reasonable litigant would expect to succeed -- and that only then could the jury go on to consider AHP's motivation for bringing the suit.[5] See Professional Real Estate v. Columbia Pictures Indus., Inc., 508 U.S. , 113 S. Ct. 1920, 1928 (1993) (PRE).
 
 
 18
 These instructions adequately point out the differences between the claim and the counterclaim. Thus instructed, the jury knew that the infringement claim was separate from the unfair competition counterclaim. It knew J&J's conduct was relevant to the former, while AHP's motivation in filing suit related to the latter. Taking the instructions as a whole, though perhaps not perfect, we cannot say they misled the jury. See Delta-X Corp. v. Baker Hughes Prod. Tools, Inc., 984 F.2d 410, 415, 25 USPQ2d 1447, 1451 (Fed. Cir. 1993).
 
 
 19
 We turn finally to AHP's contention that the district court erred in letting the jury decide the unfair competition counterclaim. AHP says that it is immune from liability for unfair competition because its lawsuit was a legitimate attempt to enforce its patent, citing a line of cases beginning with Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961).[6] See also PRE, 508 U.S. AT , 113 S. Ct. at 1928; Carroll Touch v. Electro Mechanical Sys., 15 F.3d 1573, 1582 (Fed. Cir. 1993). J&J responds that AHP's suit falls within an exception to this immunity, under which immunity does not extend to activity only "ostensibly directed toward influencing governmental action, [that] is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Noerr, 365 U.S. at 144.
 
 
 20
 AHP maintains that the exception to Noerr does not apply because its lawsuit is not a sham, as the Supreme Court defined that term in PRE. According to that case, the party alleging antitrust violations must first prove that the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." 113 S.Ct. at 1928. The litigant's subjective motivation in bringing suit comes into play only after this first, objective, prong is met. AHP says the trial court should have disposed of the counterclaim as a matter of law. It contends that J&J's evidence of unfair competition went entirely to AHP's alleged subjective bad faith, and that there was no evidence that an objective litigant would not have expected to succeed on AHP's infringement claim. Accordingly, says AHP, the unfair competition counterclaim did not meet the first part of the two-part PRE test for sham litigation, and the jury should not have been allowed to consider J&J's evidence of subjective bad faith. AHP says this error unfairly prejudiced its case against J&J.
 
 
 21
 But even assuming that the alleged errors occurred, we are not persuaded that AHP deserves a new trial; one is entitled only to a fair trial, not a perfect one. See Devices for Medicine v. Boehl, 822 F.2d 1062, 1066, 3 USPQ2d 1288, 1292 (Fed. Cir. 1987). The erroneous submission of evidence to a jury requires a retrial only if the error affects "the substantial rights of the parties." 28 U.S.C. Sec. 2111 (1988); Fed. R. Civ. P. 61 ("No error ... is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice."). We do not believe the alleged error affected AHP's substantial rights.
 
 
 22
 AHP argues that the district court's decision to let the jury hear and consider evidence and argument about its alleged bad faith created "a substantial danger that the jury's finding of noninfringement may have been based on J&J's arguments concerning 'bad faith."' AHP contends that in a case of this complexity, the erroneous submission of this evidence to the jury almost certainly confused and prejudiced the jury, resulting in a fatally tainted verdict of noninfringement. But the facts here raise a special question -- whether evidence improperly admitted in support of a claim denied by the jury might nevertheless so prejudice that jury's verdict on other claims as to warrant reversal.
 
 
 23
 In this case, the answer to that question is no. Perhaps the jury should not have heard the evidence of AHP's alleged bad faith. It is even possible that the jury's deliberations were affected by this evidence. Nevertheless, we do not lightly dismiss the jury's decision, for it found against J&J on the unfair competition claim. There is simply no indication that the jury was unduly influenced in its deliberations on the infringement claim by J&J's evidence of unfair competition; indeed, it found that evidence insufficient to support a verdict in J&J's favor. Though the reasons for the jury's general verdict are of course not spelled out, we are left with the inescapable conclusion that it chose not to credit J&J's evidence of AHP's bad faith.
 
 
 24
 Nor is there any reason to believe that the jury would have reached a result favorable to AHP if the alleged error were corrected. In addition to the allegedly improper evidence, the jury heard substantial evidence that claim 6 of the '746 patent, properly construed in light of the prior art and AHP's other patents, does not read on the accused use of norgestimate contraceptives. The judge explained the claim and counterclaim to the jury with adequate instructions. The jury considered the evidence in accordance with these instructions, concluding that J&J had not infringed the patent and that AHP had not engaged in unfair competition. AHP got a fair trial on its claim of infringement; that is all the law demands.
 
 
 25
 Our ruling is in accord with the law of the Third Circuit, whose law controls on procedural matters in this case. See Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 857, 20 USPQ2d 1252, 1258 (Fed. Cir. 1991). In the Third Circuit, "[a] determination of harmless error depends on whether 'it is highly probable that the error did not contribute to the judgment."' Advanced Medical v. Arden Medical Sys., 955 F.2d 188, 199 (3rd Cir. 1992) (citation omitted). Lockhart v. Westinghouse Credit Corp., 879 F.2d 43 (3rd Cir. 1989), disapproved on other grounds, Hazen Paper Co. v. Biggins, 507 U.S. ___, 113 S.Ct. 1701, 1709 (1993), applied this standard to facts strikingly similar to those in our case and held the error harmless.
 
 
 26
 In Lockhart, the district court improperly joined two of Lockhart's coworkers, Wilson and Bradley, as co-plaintiffs in an age discrimination suit against their employer, WCC. The jury eventually returned a verdict that WCC had illegally terminated Lockhart and Durham, but found that the termination of Wilson and Bradley was not improper. WCC moved for a new trial, which the district court denied. WCC then appealed, arguing, inter alia, that Wilson and Bradley were improperly joined as plaintiffs and that this error unfairly prejudiced its defense against the claims of Lockhart and Durham. WCC maintained that the jury was allowed to hear the cumulative testimony of Wilson and Bradley and that this testimony created a "spillover effect" on the jury which might have led it to reach a "compromise verdict" in favor of some of the plaintiffs. 879 F.2d at 53.
 
 
 27
 The Court of Appeals disagreed, reasoning that to hold for WCC "would be to create a basis for reversing every case on the speculative assertion that testimony of improperly joined plaintiffs 'spilled over' into the jury's findings of discrimination with respect to those plaintiffs properly joined." Id. The court declined "to adopt such a far-reaching rule, especially where, as here, the testimony and proffered evidence of the improperly joined plaintiffs was insufficient to support a jury's verdict in their favor." Id. The court rejected WCC's "compromise verdict" theory and declined the invitation "to indulge in unsubstantiated and speculative assertions" that the jury verdict was somehow prejudiced. Id. at 54.
 
 
 28
 In our case, like Lockhart, the district court allegedly erred in letting the jury hear evidence admitted in support of a claim that should not have gone to the jury. The appellant in each case argued that the jury's eventual verdict against it was unfairly prejudiced by this error. But the Third Circuit disagreed, as we do today, holding that the jury's apparent rejection of the alleged improper evidence vitiated the claim of unfair prejudice. That court concluded that it would require idle speculation to discard the jury's verdict. AHP asks us to indulge in the same sort of speculation here, and we decline. If error occurred, it was harmless.
 
 
 29
 We have considered J&J's arguments on its cross-appeal, but conclude that they have no merit. Even if J&J is correct and AHP's suit was barred by res judicata, that error was harmless. The district court also did not abuse its discretion in declining to declare this an exceptional case and denying attorney fees.
 
 Conclusion
 
 30
 Accordingly, the judgment of the United States District Court for the Eastern District of Pennsylvania is affirmed.
 
 
 31
 Laurie and Schall, Circuit Judges, did not participate in the vote.
 
 
 
 [1]
 J&J's appeal in Ortho was limited to the question of invalidity of the '322 patent under the doctrine of double patenting. Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 940, 22 USPQ2d 1119, 1122 (Fed. Cir. 1992). This court affirmed the trial court's holding that the patent was not invalid. Id. at 943, 22 USPQ2d at 1125
 
 
 [2]
 Claim 19 of the '322 patent reads:
 A compound of claim 1 [which sets forth a general class of steroids based on the gon-4-ene nucleus] which is 13Beta-ethyl-17Alpha-ethynyl-17Beta-hydroxygon-4-en-3-one, acetate [norgestrel acetate].
 
 
 [3]
 The question whether equitable considerations control application of the doctrine of equivalents is currently pending before this court in Hilton Davis Chemical Co. v. Warner-Jenkinson Co., No. 93-1088 (Fed. Cir. argued Feb. 9, 1994) (in banc). We express no opinion on it here
 
 
 [4]
 On the question of equities, the court said, "Some factors which may be considered regarding equities are as follows: whether J&J designed their norgestimate containing products with the knowledge of the metabolic pathways, and with the purpose of circumventing the '746 patent; whether norgestimate is an insubstantial change over norgestrel acetate, particularly in light of the '019 patent for norgestimate; whether at the time of filing AHP recognized that norgestrel acetate was a prodrug for norgestrel and that J&J misappropriated that knowledge in creating norgestimate; and whether AHP obtained its patent by imposing limitations on its claim by amendment or argument during the prosecution to avoid prior art."
 
 
 [5]
 The judge instructed the jury that to succeed on its unfair competition counterclaim:
 First J&J must provide by clear and convincing evidence that this lawsuit is objectively baseless in the sense that no reasonable litigant could realistically expect to succeed. If a patent owner would objectively conclude that he has a reasonable chance of winning the suit, then he is immune from a claim of unfair competition. Only if you find that this litigation is objectively meritless, may you then examine the second part of the two-part test, which is the litigant's objective [sic] motivation in bringing the suit. To meet this part, J&J must prove by clear and convincing evidence that this suit is an attempt to interfere directly with the business relationships of a competitor.
 
 
 [6]
 Although Noerr is directed to immunity from suit under federal antitrust laws, we assume, as the parties have not suggested otherwise, that the same principles would apply to AHP's assertions of immunity from suit under the law of unfair competition at issue here. Cf. Carroll Touch v. Electro Mechanical Sys., 15 F.3d 1573, 1582 n.9 (Fed. Cir. 1993) (assuming Noerr applies to state unfair competition law)