**CORNING GLASS WORKS, Plaintiff,**

v.

**SUMITOMO ELECTRIC U.S.A., INC. and Sumitomo Electric Industries, Ltd., Defendants.**

**SUMITOMO ELECTRIC RESEARCH TRIANGLE, INC., Plaintiff,**

v.

**CORNING GLASS WORKS, Defendant.**

Nos. 84 Civ. 9155 (WCC), 85 Civ. 3156 (WCC).

United States District Court, S.D. New York.

Dec. 7, 1987.

Fish & Neave, New York City, for Corning Glass Works; Lars I. Kulleseid, W. Edward Bailey, Daniel M. Gantt, Thomas J. Vetter, Alfred L. Michaelsen, K. McNeill Taylor, Jr., Corning Glass Works, Patent Dept., Corning, N.Y., of counsel.

Cushman, Darby & Cushman, Washington, D.C., for Sumitomo Elec., Research

Triangle, Inc., Sumitomo Elec. U.S.A., Inc. and Sumitomo Elec. Industries, Ltd.; George T. Mobille, Chris Comuntzis, Richard P. Bauer, Duane M. Byers, Whitman & Ransom, New York City, Ablondi & Foster, P.C., Italo H. Ablondi, F. David Foster, Sturgis M. Sobin, Peter J. Koenig, Washington, D.C., of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

The Sumitomo parties (defendants in 84 Civ. 9155 and plaintiffs in 85 Civ. 3156—hereafter collectively "Sumitomo") have moved (1) to amend the judgment entered October 1, 1987 to eliminate the finding that Sumitomo's infringement of U.S. Patent 3,659,915 ("the '915 patent") was willful since January 22, 1985; and (2) to stay the injunction against Sumitomo's infringement of the '915 patent and U.S. patent 3,884,550 ("the '550 patent") pending appeal, at least to the extent of permitting fulfillment of certain contracts previously entered into by Sumitomo and its related companies.

For the reasons stated below, both motions are denied, the denial of the motion to amend the judgment being without prejudice to renewal on a proffer of evidence.

*The motion to amend*

█ Sumitomo seeks to eliminate from the Court's judgment the finding of willful infringement on the asserted ground that Sumitomo's counsel understood that the determination of this issue was being deferred until the separate trial on damages which would take place in the event any of the patents in suit was ruled valid (as against Sumitomo) and infringed. Sumitomo cites several cases in which the issue of willful infringement was deferred for trial with the issue of damages.

Corning Glass Works ("Corning") cites a larger number of cases, all more recent than those relied on by Sumitomo, in which the issue of willfulness was decided on the main trial, along with the issues of infringement and validity. Corning further points out that in its proposed findings of

fact and conclusions of law, served and filed in advance of the main trial, Corning included a number of draft findings and conclusions on the issue of willfulness. At the trial, evidence on this issue was introduced, and on several occasions the Court admitted evidence which it specifically remarked was relevant at least to the issue of willful infringement (Tr. 414–15, 1185). At no time during the trial did Sumitomo's counsel indicate that they understood that the issue of willfulness was not before the Court. Moreover, in its post-trial briefs, Corning argued that Sumitomo's infringement was willful. Although Sumitomo did not discuss this issue in its post-trial briefs, neither did it assert that Corning's argument of the issue was premature.

Corning urges that Sumitomo has therefore had its day in Court on the issue of willfulness and, having lost, now wants a new trial to submit evidence it could have introduced before. That contention is not without significant merit: there obviously must be an end to litigation. However, the Court's primary concern must be justice rather than finality or expediency.

In response to Corning's assertion that there was nothing in the trial record which could conceivably have misled Sumitomo's counsel into believing that the issue of willfulness was being deferred until the separate trial on damages, Sumitomo calls attention to page 75 of the transcript of the first day of trial, where the Court remarked:

> Willfulness is something we really don't have to decide in this bifurcated trial on liability. That will relate to damages only, I guess.

The Court recognizes that this comment could reasonably have led Sumitomo's counsel to assume that it need introduce no evidence on the issue of willfulness until the bifurcated damage trial, if such a trial became necessary.

In light of the strong reasons cited in the Court's opinion to support its finding that Sumitomo's infringement was willful, it appears unlikely that any evidence Sumitomo might be able to adduce, such as opinions of counsel, could persuade the Court to the

opposite conclusion. However, Sumitomo should at least have the opportunity to try. Sumitomo's motion to amend the judgment is therefore denied without prejudice to its renewal, supported by a full proffer of the evidence on the issue of willfulness which Sumitomo would adduce if the trial were reopened.

*The motion to stay*

 Sumitomo seeks a stay, pending appeal, of the Court's injunction restraining its continued infringement of the '915 and '550 patents, at least to the extent of permitting it to fulfill the four contracts or purchase orders pursuant to which it or one of its related companies has undertaken to develop and/or supply special types of optical waveguide fibers.

Three of these are purchase orders issued to Alcan–Sumitomo Electric ("ASE"), a joint venture between Alcan and Sumitomo Electric Industries, for composite overhead power ground wire ("OPGW") cables incorporating single-mode optical waveguide fibers. These purchase orders were issued respectively on behalf of Duke Power Company, Philadelphia Electric Company and the City of Lakeland, Florida. ASE in turn has ordered the optical fibers from Sumitomo Electric Fiber Optic Corporation ("SEFOC").

The fourth is a contract between SEFOC and the Boeing Company by which SEFOC has undertaken to develop and supply a high numerical aperture multimode optical waveguide fiber for data communication in the sensing and control systems of Boeing's new 7J7 commercial passenger airplanes. This is a special fiber having unusually large core and cladding diameters of 208 and 250 microns, respectively ("208/250 fiber").

Sumitomo has submitted affidavits to show that the fibers for the OPGW cables are not available from any other source because they have heat resistant silicone coatings which must be applied during drawing of the fibers and that the large diameter 208/250 fibers are likewise unavailable elsewhere. Thus, Sumitomo contends, enforcement of the injunction pending appeal will not benefit Corning or any of its licensees, but will substantially delay important technological advances in public power and transportation with substantial detriment to the public interest. Sumitomo further asserts that the injunction will cause it irreparable harm because it will require laying off many highly-trained production workers in the North Carolina plant of its wholly-owned subsidiary, Sumitomo Electric Research Triangle, Inc. ("SERT") and that it will be impossible to rehire many of these workers if the Court's judgment is reversed on appeal or when the '915 patent expires in early 1989.

In opposition to the motion for stay, Corning has submitted affidavits designed to show:

(1) that Corning's licensee Alcoa Fujikura Ltd. had obtained Philadelphia Electric's approval of a non-silicone coated OPGW cable which it is capable of supplying in Philadelphia Electric's full contract quantities and that it failed to obtain the contract to supply such cable to Philadelphia Electric only because it was underbid by Sumitomo, whose costs did not include a patent royalty to Corning;

(2) that Alcoa Fujikura's silicone-coated fiber was also found by Duke Power to meet the specifications for its OPGW cable and Alcoa Fujikura failed to obtain the contract to supply such fiber only because it was underbid by Sumitomo;

(3) that the Lakeland, Florida contract was awarded without competitive bidding but there is no apparent reason why the Lakeland's performance specifications and volume requirements could not have been satisfied by Alcoa–Fujikura;

(4) that ASE could fulfill the Duke Electric, Philadelphia Electric and Lakeland contracts by buying fiber from Corning or one of its licensees;

(5) that Corning had already given Boeing a waiver of any infringement claim for the acquisition of up to 500 meters of cabled Sumitomo 208/250 fiber for the 7J7 aircraft project, which Boeing has informed Corning has been indefinitely postponed; and

(6) that Corning's fiber production plant in Wilmington, North Carolina, in which Corning has invested over $90 million since 1984, is operating at only about 40% of capacity, and approximately 340 workers have been laid off since the spring of 1986, due to decreased demand and increased competition, including the infringing competition from Sumitomo.

In *S.C. Johnson, Inc. v. Carter-Wallace, Inc.*, 225 U.S.P.Q. 968, 971 (S.D.N.Y.1985) [Available on WESTLAW, 1985 WL 501], *aff'd*, 228 U.S.P.Q. 367, 781 F.2d 198 (Fed. Cir.1986), Judge Keenan of this Court enunciated the following standard for determining motions for a stay or injunction pending appeal in patent infringement cases:

> Injunctive relief in a patent case is not stayed pending appeal unless the party seeking that relief meets the burden of establishing compelling reasons justifying it. 11 C. Wright & A. Miller, Federal Practice & Procedure § 2904 (1973) summarizes the applicable standards, as follows:
>
> > [i]t generally is required that (a) the applicant make a strong showing that he is likely to succeed on the merits of the appeal; (b) the applicant establish that unless a stay is granted he will suffer irreparable injury; (c) no substantial harm will come to other interested parties, and (d) a stay would do no harm to the public interest.

The same test was applied in *Hayes v. City University of New York*, 503 F.Supp. 946, 962–63 (S.D.N.Y.1980), *aff'd*, 648 F.2d 110 (2d Cir.1981), which is cited and relied on in Sumitomo's Reply Memorandum.

When these criteria are weighed in the present case, the balance tips decisively in favor of Corning. The likelihood that Sumitomo will succeed on appeal does not appear strong in light of the fact that three separate trial tribunals have ruled against it after considering essentially the same contentions based on essentially the same evidence.

Insofar as concerns comparison of the injury which the injunction would cause Sumitomo with that which Sumitomo's continued infringement would cause Corning, the scale tips slightly in favor of Sumitomo because the injunction will mean shutting down entirely its production of infringing fiber in this country, whereas Sumitomo's continued infringement will mean merely scaling down Corning's production.

Insofar as the public interest is concerned, the scale tips sharply in favor of Corning. The Court is not persuaded by Sumitomo's claim that the consumers served by Duke, Philadelphia and Lakeland will be significantly affected if those utilities are not able to purchase OPGW cable incorporating Sumitomo's infringing fiber. The users surely will not notice any difference in service when the OPGW cable is installed; much less would their service be affected by any difference between the fiber made by SEFOC and that made by Corning or one of its licensees. Moreover, SERT's employee layoffs due to the injunction are substantially matched by Corning's layoffs due to Sumitomo's infringement.

The public has an interest in the enforcement of valid patents. The assumption underlying the constitutional provision for the patent system and the statutes implementing that provision is that research, development and innovation are encouraged by granting to inventors the right to exclude others from the use of their inventions for a limited period of 17 years. This right of exclusion is their reward for the time and expense spent in research and for their public disclosure of the fruits of that research.

Corning's '915 patent has less than a year and a half to run. If Sumitomo's infringement is allowed to continue during the pendency of the appeal, the patent will almost have expired before the appeal is decided, and Corning will have gotten virtually nothing in the way of exclusionary rights in return for its research and its disclosure, not to mention its substantial expenses of litigation.

As the Court of Appeals for the Federal Circuit stated in *Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.), *cert denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983):

The very nature of the patent right is the right to exclude others. Once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights. The infringer should not be allowed to continue his infringement in the face of such a holding.

The arguments for enforcing the injunction pending appeal are particularly strong where, as here, the infringement has been found to be deliberate and willful. As the Court of Appeals for the Federal Circuit stated in *Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003, n. 12 (Fed.Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).

> One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.

*Crucible, Inc. v. Stora Kopparbergs Berslags A.B.*, 226 U.S.P.Q. 842, 845, 846 (W.D.Pa.1985) [Available on WESTLAW, 1985 WL 2872], *aff'd*, 793 F.2d 1565 (Fed. Cir.1986) involved factual circumstances so strikingly similar to those in the present case that, but for the difference in names, the opinion could have been written for the decision on this motion:

> Stora, as in Smith International, was aware of Crucible's patents and, based upon the assumption it was infringing Crucible's patents, chartered a strategy "to check patent validity; contest patent validity; and in the process, to get defendants' products into the United States market." *Crucible* [, *Inc. v. Stora Kopparbergs*] 594 F.Supp. [1249] at 1264, 226 USPQ at 48 [ (W.D.Pa.1984) ]. Stora assumed the risk that its strategy would not succeed, that the patents would be found valid and its business and markets thereafter disrupted. We have found that the patents' validity and continuing infringement clearly have been established; we have, *inter alia*, found that the patents were "revolutionary," and achieved that which was considered to be incompatible properties in the same product. Consequently, as in *Smith Interna-*

*tional*, plaintiff now is entitled to its injunction and Stora, therefore, should not be heard to complain of that which it had every reason to anticipate would be the result if it lost its gamble.

\* \* \* \* \* \*

In a few years the *Holtz* and *Steven* patents will expire. It is clear that to further delay Crucible's enjoyment of its exclusive patent rights would be inequitable to it and contrary to the public's interests and that irreparable harm to Crucile would result.

For the reasons indicated, Sumitomo's motion to stay the injunction pending appeal is denied.

SO ORDERED.